UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

B.F. CARVIN CONSTRUCTION CO.,                    CIVIL ACTION
INC., ET AL

VERSUS                                                            NO. 06-7155

CNA INSURANCE COMPANY, ET AL                  SECTION: "C"(1)

**ORDER AND REASONS**[1]

This matter was tried before the Court without a jury on May 27 and May 28, 2008, and taken under advisement. In addition, the parties have submitted post-trial memoranda (Rec. Docs. 37 & 38). Having considered the testimony and evidence adduced at trial, the record, the arguments of counsel, and the law, the Court finds that Peabody Construction Company, Inc. ("Peabody")[2] is not entitled to recover its claim for business interruption coverage.

I. BACKGROUND

Peabody's business location was a warehouse with substantial office space that was covered by the insurance policy under dispute, and was damaged during Hurricane Katrina. (Rec. Doc. 31, p. 8). Moreover, Hurricane Katrina was a windstorm, a covered cause of loss under the insurance policy. *Id.* Before the storm, Peabody's operations were "limited to multi-

---

[1] Aaron A. Reuter, a second year law student at Tulane University Law School, assisted in the research and preparation of this decision.

[2] Peabody Construction Company, Inc. is the only Plaintiff that remains in the present action.

million dollar Louisiana Public Works Act projects." (Rec. Doc. 37, p. 2). Following Hurricane Katrina, Peabody alleged that it could no longer bid on projects of that type because of space and equipment limitations imposed by its operations being moved to a small trailer while the warehouse was repaired. *Id.* During that time, Peabody maintained that it undertook smaller, residential projects in an effort to mitigate losses. *Id.* Prior to and during Hurricane Katrina, Peabody had one Louisiana Public Works Act project, the Salmen High School in Slidell, Louisiana ("Salmen"), which was cancelled after the storm based on a convenience clause in that contract. (Rec. Doc. 32, p. 4).

## II. ARGUMENTS OF THE PARTIES

The parties dispute whether or not Peabody is afforded coverage under the Business Income (And Extra Expense) Coverage Form contained within its insurance policy written by Transportation Insurance Company ("CNA"). The pertinent language of that provision reads:

> We will pay the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property, including personal property in the open (or in a vehicle) within 1000 feet, at premises that are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.
>
> . . . .
>
> 1. **Business Income**
>
>    Business Income means the:
>
>    a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and
>
>    b. Continuing normal operating expenses incurred, including payroll.
>
>    . . . .

    **B.**    **EXCLUSIONS**

        1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

        . . . .

    **b.**    Delay, loss of use or loss or market.

        . . . .

    **4.**    **Special Exclusions**

        The following provisions apply only to the specified Coverage Forms.

        **a.**    **Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

            We will not pay for:

        . . . .

            **(2)**    Any increase of loss caused by or resulting from:

    . . . .

                **(b)**    Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations," we will cover such loss that affects your Business Income during the "period of restoration."

                **(3)**    Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration."

(Ex. 52, CNA 00227, 00252-00255) (emphasis in original).

    Peabody argued at trial that, based on its calculations, Peabody was owed $33,648.00 in

continuing fixed expenses for each month of the "Period of Restoration," from September 2005 through February 2006, for a total business interruption loss of $201,888.00. (Ex. 45, p. 2; Rec Doc. 32, p. 4). Additionally, Peabody averred that its business losses were not the result of the cancellation of the Salmen contract, nor the result of a delay and/or loss of market after Hurricane Katrina. (Rec. Doc. 32, p. 4). Rather, Peabody contended that its losses were due to its inability to operate because of physical damage to the warehouse building. *Id.*

CNA argued that in the eight months prior to Hurricane Katrina, Peabody lost $81,650.00 while performing public works construction; yet, in the six months following the storm, while performing residential construction, Peabody made $316,255.00. (Rec. Doc. 38, Ex. A). Thus, because the insurance policy covered "actual loss," CNA claimed that Peabody could not have had a business interruption claim because it was dramatically more profitable following Hurricane Katrina. *Id.* Furthermore, CNA submitted that the policy did not cover losses due to cancellation of contracts (here the Salmen contract), nor losses resulting from delay, loss of use or loss of market. (Rec. Doc. 34, p. 6, 8). In either case, CNA contended that Peabody had no claim for losses resulting from business interruption.

### III. LAW AND ANALYSIS

In claims for losses resulting from business interruption, the claimant bears the burden of proving that it is entitled to proceeds under the insurance policy and the amount of that entitlement. *Dictiomatic, Inc. v. U.S. Fidelity & Guar. Co.*, 985 F.Supp. 594, 603 (S.D.Fla. 1970); *Cora Pub. Inc. v. Continental Cas. Co.*, 619 F.2d 482, 488 (5th Cir. 1980). The Court finds that Peabody has not met this burden, and thus, may not recover for losses resulting from business interruption.

The policy states that "Business Income" means the "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; **and** [c]ontinuing normal operating expenses incurred, including payroll." (Ex. 52, CNA 00227) (emphasis added). In cases where policy language was extremely similar, courts have construed the "and" to indicate that addition is necessary to calculate "Business Income." *See, e.g., United Land Investors, Inc. v. Northern Ins. Co. of America*, 476 So.2d 432, 436 (La. App. 2nd Cir. 1985) (finding that a similar policy provision unambiguously required the addition of the net profit and operating expenses); *Shelter Mutual Ins. Co. v. Culbertson's Limited, Inc.*, 1999 WL 461826 at *5, 6 (E.D.La. July 2, 1999) ("there are 'expenses' which a company has paid out, that it has not 'earned[,]' [e]rgo, the term 'and all other operating expenses earned by the business.'"); *Continental Ins. Co. v. DNE Corp.*, 834 S.W.2d 930, 933 (Ten. 1992) (finding that the sum of net profit and operating expenses was the formula that should be used when calculating business income under nearly identical policy terms). Therefore, the Court finds that the proper calculation consists of adding "Net Income . . . **and** [c]ontinuing normal operating expenses." (Ex. 52, CNA 00227) (emphasis added).

Peabody is not entitled to recover losses resulting from business interruption because Peabody's "Business Income" increased as defined by the insurance policy after Hurricane Katrina. Nineteen months of financial records, from August 2004 to February 2006, were provided by Peabody to CNA in an effort to identify monthly averages for income and expenses. Based on Peabody's data, and the policy's formula for calculating "Business Income," the Court

finds that Peabody's "Business Income" increased following Hurricane Katrina.[3]  As shown in

---

[3] *Table 1*: Peabody's financial disclosures to CNA (Ex. 5) have been subjected to the policy's formula for calculating "Business Income."  In Peabody's financial records, the title "Gross Margin" was given to the amount that the policy refers to as "Net Income."  Indeed, Peabody calculated "Gross Margin" by subtracting the "Total Cost of Sales" from "Income"(Ex. 5).  The "Period of Restoration" is indicated in the table by bold type face.  The Court notes that CNA's financials for September 2005 includes a $19,497.00 charge for "Hurricane Katrina Expenses," while October 2005 includes a $19,497 credit for "Hurricane Katrina Expenses," resulting in a negative number for "continuing expenses" for October 2005.

| Month | "Net Income"   + | Continuing Expenses   = | "Business Income" |
|---|---|---|---|
| August 2004 | 37,732.00 | 20,360.00 | 58,092.00 |
| September 2004 | 5,260.00 | 24,294.00 | 29,554.00 |
| October 2004 | 37,254.00 | 23,376.00 | 60,630.00 |
| November 2004 | 20,696.00 | 26,039.00 | 46,735.00 |
| December 2004 | 20,435.00 | 25,957.00 | 46,392.00 |
| January 2005 | 9,325.00 | 25,486.00 | 34,811.00 |
| February 2005 | 4,866.00 | 29,468.00 | 34,334.00 |
| March 2005 | 16,967.00 | 26,452.00 | 43,419.00 |
| April 2005 | 34,497.00 | 21,439.00 | 55,936.00 |
| May 2005 | 15,778.00 | 20,506.00 | 36,284.00 |
| June 2005 | (2,117.00) | 20,839.00 | 18,722.00 |
| July 2005 | 12,206.00 | 17,549.00 | 29,755.00 |
| August 2005 | 4,929.00 | 16,362.00 | 21,291.00 |
| **September 2005** | **96,448.00** | **35,130.00** | **131,578.00** |
| **October 2005** | **36,962.00** | **(3,129.00)** | **33,833.00** |
| **November 2005** | **116,414.00** | **16,543.00** | **132,957.00** |
| **December 2005** | **(36,243.00)** | **32,974.00** | **(3,269.00)** |
| **January 2006** | **122,650.00** | **30,726.00** | **153,376.00** |
| **February 2006** | **124,613.00** | **32,348.00** | **156,961.00** |

*Table 1*, the average "Business Income" for the thirteen months before Hurricane Katrina was $515,955.00/13 = **$39,688.85**. The average "Business Income" for the six month "Period of Restoration" was $605,436.00/6 = **$100,906.00**. Thus, the "Business Income" for the "Period of Restoration" was more than double that of the prior thirteen months. While the parties argued before, and during trial, about the proper calculation of income, and what amount may be legally used or recognized as profit, these contentions are irrelevant for the instant calculation. The policy unambiguously defines the method by which "Business Income" is to be calculated for the purpose of determining losses resulting from business interruption.

In this case, regardless of the accounting representations made by counsel for both Peabody and CNA, Peabody has not demonstrated an "actual loss" of "Business Income" as required by the insurance policy.[4] Moreover, this type of policy is designed to "prevent the insured from being placed in a *better* position than if no loss or interruption of business had occurred." *United Land,* 476 So.2d at 346 (emphasis in original). Therefore, Peabody's claim for business interruption losses is barred because it already enjoys a better position based on the formula used to calculate this type of loss under the CNA insurance policy.

In addition, even if the above calculations had shown that Peabody was entitled to business interruption losses, which they do not, the Court would have examined the policy

---

[4] Peabody's loss calculation for continuing fixed expenses totaling $33,648.00 is inherently flawed. Instead of adding expense costs for twelve months and dividing them by twelve months to obtain a monthly average, Peabody's calculations added costs for twelve months and divided by the number of entries, sometimes only two or three. (Ex. 45). During cross-examination of Peabody's bookkeeper, Donna Purcell, counsel for CNA demonstrated that Peabody's calculations did not use the correct denominator, 12, to establish monthly averages.

exclusions, namely the exclusion for delay and/or loss of market and for cancellation of contract. The Court notes that Peabody proffered evidence that the deadlines for bidding on a vast majority of public works projects were extended, even so far as a year from the original deadline, following Hurricane Katrina.  (Ex. 61).  Thus, Peabody may be precluded by the loss of market exclusion.  Furthermore, the school district's cancellation of the Salmen contract may have prohibited recovery pursuant to the cancellation of contract exclusion.

Finally, Peabody contends that the fact that it was paid under the Extra Expense provision of the Business Income Coverage demonstrates that CNA is estopped from claiming that these exclusions could have applied.  However, the exclusion for cancellation of contract under the Extra Expense provision excluded coverage for cancellations "beyond the restoration period," while the Business Income coverage excluded cancellations "during the restoration period."  (Ex. 52, CNA 00252-00255).  The Salmen contract was cancelled during the restoration period.  Therefore, the Extra Expense exclusion for cancellation would not have applied, but the Business Income exclusion could be applied, had there been an actual loss sustained.

IV. CONCLUSION

For the reasons stated above,

IT IS ORDERED that judgement be entered in favor of Defendant, Transportation Insurance Company.

New Orleans, Louisiana, this 14th day of July, 2008.

                                         HELEN G. BERRIGAN
                                         UNITED STATES DISTRICT JUDGE